O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENGLEWOOD LENDING INC., <br><br> Plaintiff, <br><br> v. <br><br> G&G COACHELLA INVESTMENTS, LLC, et al., <br><br> Defendants. <br><br>———————————————— <br> G&G COACHELLA INVESTMENTS, LLC, et al., <br><br> Counterclaimants, <br><br> v. <br><br> ENGLEWOOD LENDING INC., PLAINFIELD SPECIALTY HOLDINGS I INC., <br><br> Counterdefendants. <br> ———————————————— | Case No. EDCV 09-223-VAP (OPx) <br><br> **[Motion filed on July 8, 2009]** <br><br> **ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS AND THIRD PARTY CLAIMS** |

The "Motion by Plaintiff and Counterdefendant Englewood Lending Inc. and Third Party Defendant Plainfield Specialty Holdings I Inc. to Dismiss Counterclaims and Third Party Claim" ("Mot.") filed by

Plaintiff and Counterdefendant Englewood Lending Inc. ("Englewood") and Third Party Defendant Plainfield Specialty Holdings I, Inc. ("Plainfield Speciality") came before the Court for hearing on August 17, 2009.  After reviewing and considering all papers filed in support of, and in opposition to, the Motion, as well as the arguments advanced by counsel at the hearing, the Court GRANTS the Motion and dismisses the two counterclaims and third party claims ("Counterclaims") filed by G&G Coachella Investments, LLC, 350 RC, LLC, Stone Water LLC and Gibralt U.S., Inc. ("Gibralt"), (collectively "Borrowers").

**I.  BACKGROUND**

**A.  Procedural History**

On May 22, 2009, Englewood filed its First Amended Complaint ("FAC") against the Borrowers asserting the following claims: (1) Judicial Foreclosure against Defendant G&G Coachella Investments, LLC; (2) Judicial Foreclosure against Defendant Stone Water, LLC; (3) Judicial Foreclosure against Defendant 350 RC, LLC; (4) Breach of Contract against Defendant G&G Coachella Investments, LLC; (5) Breach of Contract against Defendant Stone Water, LLC; (6) Breach of Contract against Defendant 350 RC, LLC; (7) Breach of Contract against Defendant Gibralt U.S., Inc.; and (8) Fraudulent Transfer against Defendant Gibralt U.S., Inc. and DOE 1.

On June 3, 2009, the Borrowers filed their "Answer and Counterclaims by G&G Coachella Investments, LLC, 350 RC, LLC, Stone Water LLC and Gibralt US, Inc." ("Answer" and "Countercl.")

The Court recently considered the motion for judgment on the pleadings filed by the Borrowers. The Court determined California law applied to the claims in the FAC and denied judgment on the pleadings. (Order Denying Motion on the Pleadings 10.)

**B.   Factual Allegations**

In October 2007, the Borrowers entered into several contracts with Plainfield West, Inc., Plainfield West III, Inc., and Plainfield West IV, Inc. for $55,000,000. (Countercl. page 19 (unnumbered paragraph), ¶¶ 118-121, 139-42; Answer ¶¶ 15, 17, 21, 23, 27, 29, 34-37.) The Borrowers refer to these contracts as the "Purported Loan" in the Counterclaim and here they are referred to as "the Obligations." (See Countercl. ¶ 141.) On July 1, 2008, Plainfield West, Inc., Plainfield West III, Inc., and Plainfield West IV, Inc. merged with and into Englewood. (Order Denying Motion on the Pleadings 3.)

The entities which merged into Englewood and their affiliates advanced sums to the Borrowers and received management rights, quarterly payments, and proceeds in

return, among other benefits.  (Countercl. ¶¶ 141, 149-50, 153, 155.)  Gibralt executed the Gibralt Limited Guarantee for certain of the Borrowers' Obligations. (Countercl. ¶¶ 160, 169-174.)

The Borrowers defaulted on the Obligations. (Countercl. at pages 19-20 (unnumbered paragraphs).)

## II. LEGAL STANDARD

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted.  As a general matter, the Federal Rules require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007).  In addition, the Court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic, 127 S. Ct. at 1964-65 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 1965. "[T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings," Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988).

### III. DISCUSSION

The first Counterclaim, for declaratory relief for "recharacterization," overlaps entirely with the relief sought by the fourth through seventh claims in the FAC for breach of contract.  It is unnecessary given the Borrowers' denial of liability for these claims and their

first and second affirmative defenses, failure to state a claim and full performance, respectively.

The second Counterclaim is for declaratory relief regarding "Amount of Limited Guaranty." The second Counterclaim seeks relief indistinct from denial of the seventh claim and is superfluous in light of the Borrowers' first and second affirmative defenses. The Court GRANTS the Motion as to both Counterclaims for the reasons explained below.

**A. Applicable Law**

The parties dispute whether federal or state law applies to the procedural and substantive elements of the Counterclaims.

    **1. Procedural Law**

Federal procedural law governs the Counterclaims as they seek declaratory relief. See Golden Eagle Ins. Co. v. Travelers Companies, 103 F.3d 750, 753 (9th Cir 1996) (overruled in part on other grounds by Government Employees Ins. Co. v. Dizol, 133 F.3d 1220 (9th Cir. 1998)); DeFeo v. Proctor & Gamble Co., 831 F. Supp. 776, 779 (N.D. Cal. 1993) ("The propriety of granting declaratory relief in federal court is a procedural matter."); (Opp'n 5-6, Reply 3.)

In <u>Golden Eagle</u>, the Ninth Circuit considered an action for declaratory relief brought under California law which was removed to federal court. Federal law governed the district court's jurisdiction and California law governed the disposition of the action. <u>Golden Eagle</u>, 103 F.3d at 753, 758. Accordingly, Englewood and Plainfield Specialty's reliance on Cal. Civ. Code section 1060 is misplaced. (<u>See</u> Mot. 10.)

The Borrowers argue they state a claim because they allege the existence of a substantial controversy between parties with adverse legal interests which is immediate and real. (Opp'n 7-9.) This misses the thrust of the Motion, which does not attack the Borrowers' standing. (Reply 3.)

**2. Substantive Law**

The Court has diversity jurisdiction over the FAC and the Borrowers invoke supplemental jurisdiction over the Counterclaims. (FAC ¶ 10; Countercl. ¶ 117.) State substantive law governs the FAC and Counterclaims. <u>See</u> <u>Golden Eagle</u>, 103 F.3d at 758; (Reply 2-3.)

In its Order dated July 6, 2009 the Court determined it would apply California law. (Order Denying Motion for Judgment on the Pleadings 7-10.) As the instant Motion relates to the same documents the Court considered when

issuing its July 6, 2009 Order, the Court uses the same approach here. (Id.; Answer ¶¶ 15, 17, 21, 23, 27, 29, 34-37 cited at Mot. 13.)

**B. First Counterclaim: "Recharacterization"**

Englewood and Plainfield Specialty move the Court to dismiss the first Counterclaim as (1) "redundant"; and (2) failing to state a claim under California law. According to the moving parties, recharacterization is a concept used by bankruptcy courts to determine creditors' priority rather than a stand-alone claim. (Mot. 11-14; Reply 5 citing In re Official Committee of Unsecured Creditors for Dornier Aviation (North America) Inc., 453 F.3d 225, 231 (4th Cir. 2006) ("recharacterization" is a term used to describe the power of a bankruptcy court to alter the priority of claims pursuant to Bankruptcy Code sections 726 and 105(a).)

The first Counterclaim asks the Court to "enter a judgment that the . . . liability under the Loan Agreement, Guaranties, Notes and Deeds of Trust is zero and that Gibralt's liability under the Gibralt Limited Guaranty is zero." (Countercl. ¶ 183.) This is the opposite of the relief sought by Englewood in its fourth through seventh claims, in which it asserts the Borrowers breached the Obligations and owe monies. (FAC ¶¶ 64, 66, 69, 74, 79.)

The first Counterclaim is unnecessary given the Borrowers' first and second affirmative defenses: failure to state a claim and full performance. (Answer ¶¶ 94-95.) If the Obligations created an investment rather than a loan, or if the Borrowers fully performed under the Obligations, their outstanding balance would be zero. In sum, the first Counterclaim is superfluous.

Accordingly, the Court has discretion to dismiss it. The Borrowers seek relief under the Declaratory Judgment Act and all relief thereunder is discretionary. See 28 U.S.C. § 2201 ("any court of the United States . . . may declare the rights . . . of any interested party . . . whether or not further relief is or could be sought."); Chesebrough-Pond's, Inc. v. Faberge, Inc., 666 F.2d 393, 396 (9th Cir. 1982)("Declaratory relief is available at the discretion of the district court. [citations]"); Solenoid Devices, Inc. v. Ledex, Inc., 375 F.2d 444 (9th Cir. 1967) ("In the federal declaratory judgment cases, the word 'may' [in 28 U.S.C. 2201] has never been held to uniformly mean 'shall.'").

The Court looks to the purpose of the Declaratory Judgment Act when determining whether to entertain a declaratory judgment claim. See Hal Roach, 896 F.2d at 1555. "The purpose of the Declaratory Judgment Act is 'to relieve potential defendants from the Damoclean

1  threat of impending litigation which a harassing
2  adversary might brandish, while initiating suit at his
3  leisure - or never.'"  Id. citing Societe de
4  Conditionnement v. Hunter Engineering Co., 655 F.2d 938,
5  943 (9th Cir. 1981).

7     Here the first Counterclaim overlaps with the relief
8  sought in claims four through seven of the FAC and with
9  two of the affirmative defenses the Borrowers assert.
10 Accordingly, entertaining the first Counterclaim does not
11 serve the intended purpose the Declaratory Judgment Act.
12 Here the Borrowers do not live in fear of a potential
13 suit; they are already obliged to defend against one.
14 See Hal Roach, 896 F.2d at 1555.

16    The Borrowers argue it is permissible to bring a
17 Counterclaim regarding "the same issues as those brought
18 up by" a plaintiff's claim "and the defendant's answer
19 thereto."  (Int'l Woodworkers of America Local 6-64, CIO
20 v. McCloud River Lumber Co., 119 F. Supp. 475, 488 (C.D.
21 Cal. 1954) cited at Opp'n 18.)  The Borrowers' authority
22 does not show entertaining such a counterclaim is
23 required, however.  See Stickrath v. Globalstar, Inc.,
24 2008 WL 2050990, *3 n.2 (N.D. Cal. 2008)(Henderson, J.)
25 (reviewing cases in which courts dismissed counterclaims
26 that were "either the 'mirror image' of claims in the

complaint or redundant of affirmative defenses" and striking such counterclaims).

In the alternative, the Borrowers contend federal law allows for recharacterization as a claim and urge the Court to use the <u>AutoStyle Plastics</u> test endorsed by the Sixth Circuit to determine whether the Obligations created debt or equity. (Opp'n 10 citing <u>In re AutoStyle Plastics</u>, 269 F.3d 726, 747-48 (6th Cir. 2001).)[1]

The cases on which the Borrowers rely are from bankruptcy courts or otherwise describe recharacterization in the bankruptcy context. (<u>See</u> Reply 6-7; Opp'n 9-10 citing <u>inter alia</u> <u>In re Repository Technologies, Inc.</u>, 381 B.R. 852, 858, 863-65 (N.D. Ill. 2008) (debt claim of Chief Executive Officer properly recharacterized as equity); <u>In Re Official Committee of Unsecured Creditors for Dornier Aviation (North America) Inc.</u>, 453 F.3d at 234 (bankruptcy court properly considered various factors when recharacterizing transaction); <u>Fireman's Fund Ins. Co. v. Sammons</u>

---

[1] Although no published Ninth Circuit case relies on <u>AutoStyle Plastics</u>, at least one Ninth Circuit case relies on a similar set of factors to determine, for tax purposes, whether advances were debts or equity. <u>See Hardman v. U.S.</u>, 827 F.2d 1409, 1412 (9th Cir. 1987) (appeal of district court decision regarding tax deficiency). The use of a test similar to that of <u>AutoStyle Plastics</u> in tax matters does not establish recharacterization as a claim private parties can bring against each other.

Financial Group, Inc. (In re Woodson Co.), 813 F.2d 266, 272 (9th Cir. 1987) ("We conclude that the transactions with permanent investors were loans. . . Labels cannot change the true nature of the underlying transactions. From the facts surrounding these transactions we conclude the bankruptcy court was clearly erroneous in finding them purchases and sales"[2] rather than equity).

For example, the In re Repository Tech, Inc. Court observed:

> When a creditor has contributed capital to a debtor as a loan, but the loan has the character and substance of equity, bankruptcy courts may recharacterize the debt as equity – even if the other requirements of equitable subordination are not satisfied . . . The effect of recharacterizing debt as equity 'is subordination of the claim as a proprietary interest . . . .

381 B.R. 852, 863-65. In sum, the Borrowers' authorities show recharacterization is a tool bankruptcy courts use when deciding the priority to give certain claims. They do not show it is a claim parties can assert against each other under California law or under federal law independent of bankruptcy proceedings. This supports granting the Motion.

---

[2] According to Hardman v. U.S., 827 F.2d 1409, 1411 (9th Cir. 1987), a sale is debt and a contribution to capital is equity.

1   The Borrowers filed a Request for Judicial Notice of
2 proceedings in Friedman's Inc. v. Goldman Sachs Credit
3 Partners (In Re Friedman's), No. 09-51010 (Bankr. D. Del.
4 Aug. 3, 2009), a case in which Plainfield Direct is a
5 party.  Plainfield Direct is not a party in the instant
6 case.  The Complaint in In Re Friedman's seeks
7 recharacterization of certain claims by the Delaware
8 Bankruptcy Court.  (See Opp'n 15-16.)  Englewood and
9 Plainfield Speciality filed an objection to the request
10 for judicial notice.  The extent of judicial notice the
11 Court could take of that proceeding is the parties
12 thereto are engaged in litigation and the Bankruptcy
13 Court has been asked to recharacterize certain contracts.
14 See Wyatt v. Terhune, 315 F.3d 1108, 114 n.5 (9th Cir.
15 2003).  The Court does not find these facts useful in
16 resolving the instant Motion and accordingly does not
17 take judicial notice of them.

19   Accordingly, the Court GRANTS the Motion as to the
20 first Counterclaim.

22 **C.   Second Counterclaim: "Amount of Limited Guaranty**"
23   The second Counterclaim seeks a judicial declaration
24 regarding the amount of Gibralt's liability under one of
25 the Obligations, the Gibralt Limited Guaranty, and the
26 amount of liquid net assets Gibralt must maintain
27 thereunder.  (Countercl. ¶ 187.)

13

Englewood and Plainfield Specialty urge the Court to dismiss the second Counterclaim as duplicative of the FAC's seventh claim, for breach of the Gibralt Limited Guaranty.  (Mot. 16; FAC ¶ 79.)

Englewood's seventh claim asserts the Gibralt Limited Guaranty required Gibralt to own "at all times . . . net liquid assets of at least $12,000,000. . ."  According to the FAC, Gibralt breached the Gibralt Limited Guaranty by "no longer" possessing "net liquid assets in the amount of $12,000,000 . . . ."  (FAC ¶¶ 42, 79(c).)

The basis of the asserted actual and present controversy between the parties which forms the basis of the second Counterclaim is merely the denial of these allegations.  (<u>See</u> Mot. 16.)  The Borrowers' second Counterclaim reiterates Englewood's position and states "Gibralt contends that . . . [t]he Senior COD Lien has been released and therefore Gibralt no longer has a requirement to maintain a level of net liquid assets."  (Countercl. ¶¶ 188-189.)

Also, the relief requested in the second Counterclaim is the dismissal of the seventh claim and the success of the first and second affirmative defenses.  The Borrowers ask the Court to declare "Gibralt is no longer required

14

to maintain a minimum level of liquid assets." (Countercl. ¶ 191.) Accordingly, the second Counterclaim seeks relief overlapping entirely with that sought by the seventh claim.

The Borrowers concede the second Counterclaim seeks relief very similar to that requested in the seventh claim. (Opp'n 18-19.) They argue the Court should maintain it, however, so they may be sure to gain a determination of how much Gibralt must maintain in liquid assets. They assert the Court could resolve the seventh claim without determining this issue. (FAC ¶¶ 79(a)-(d); Opp'n 18-19.) This argument is speculative and accordingly unpersuasive.

Although the Court has the power to entertain the second Counterclaim, it declines to do so here for the reasons discussed above: Englewood and Plainfield Specialty have already brought suit and accordingly the issues on which the Borrowers seek a determination are already before the Court. See Hal Roach, 896 F.2d at 1555. The Court GRANTS the Motion as to the second Counterclaim.

**IV. CONCLUSION**

    For the above reasons, the Court GRANTS the Motion as to both Counterclaims.

Dated: <u>August 17, 2009</u>

                              VIRGINIA A. PHILLIPS
                         United States District Judge